W. SHARP, J.,
dissenting.
I would affirm the trial court’s determination that all sums due under the promissory note are barred by the five year statute of limitations. § 95.11(2)(b), Fla. Stat. The facts in this case are not in dispute. The issue is the interpretation of the legally “amateur” promissory note employed by the parties in this case.
The printed form of the note provides (in part): “The maker and endorser of this note further agree to waive demand, notice of non-payment and protest....” The principal sum due is $28,000.00, payable in monthly installments of $304.85, for 223 consecutive months, including interest at 11.5%. At the bottom of the installment note appears the following hand written words: “1st payment due 6-4-90 and payments after 30 days past due date must include $25.00 late fee. Payments after 60 days, note is in default, ’’(emphasis supplied)
The Lincolns made the first two payments timely but made no additional installment payments thereafter. No demand for payment was made by the holder or payee of the note, apparently, but the note waives demand and notice of nonpayment. The trial court construed the language of the note as meaning that the total indebtedness owed on the note was automatically accelerated and became due and payable on the 61st day after the third installment should have been paid. The result of this construction subjects the full balance of the debt owed to the bar of the five year statute of limitations,[1] because the full note indebtedness became due more than five years before the suit in this case was filed.[2]
The first issue in this case is to determine whether or not the acceleration clause was automatic, self-executing or absolute. In Baader v. Walker, 153 So.2d 51 (Fla. 2d DCA), cert. denied, 156 So.2d 858 (Fla.1963), the court construed an acceleration clause in a promissory note as being “self-executing” or “absolute. ” The note provided:
Upon default in the payment of principal and/or interest due on any note, secured by said mortgage, all notes so secured and remaining unpaid shall forthwith be *107 come due and payable notwithstanding their tenor.
The court noted there is a conflict in decisions outside this jurisdiction, and it adopted a view which since has been followed in this state. That is, if a promissory note contains language which accelerates the total indebtedness on the happening of a default in a installment payment due thereunder, but it does not contain language which expressly gives the holder or payee of the note the option to accelerate the total indebtedness, then, it will be treated as absolute. Absent proof of waiver by mutual assent or acquiescence, (which are not relevant to this case) the full indebtedness becomes due or “matures” when a default occurs.
The Baader court said it was necessary to give the words in an instrument their full and plain meaning, and no more. If the note does not contain language giving the holder the option to accelerate, then the court should not read optionality into it. Rather it said, a court should give effect to the express intent of the parties, citing to Fischer v. Wood, 119 S.W.2d 114 (Tex.App.1938).
Applying Baader to this case, the note has no optional acceleration provision.[3] Thus the note matured and the full amount represented by the note went into default on October 4, 1990, based on its express terms. No demand or notice was necessary.
The second issue in this case is whether the note contains an acceleration provision. In order to accelerate the total indebtedness due on an installment note, after default on an installment, the note must contain an acceleration provision. Florida Zippo, Inc. v. Prudential Ins. Co. of America, 579 So.2d 192 (Fla. 3d DCA), rev. denied, 589 So.2d 290 (Fla.1991); 11 Am-Jur.2d Bills & Notes § 194; 10 C.J.S. Bills & Notes § 92. Whether an acceleration clause exists is governed by the law of contracts.[4] It is the trial court’s responsibility to construe the language of a promissory note in this regard to give effect to the words used, and to ascertain the original intent of the parties.[5]
There are two decisions decided by our sister court, which appear to reach different conclusions construing similar language. In the first case, Cook v. Merri-field, 335 So.2d 297 (Fla. 1st DCA 1976), the installment instrument provided:
Failure to pay any installment herein promptly when due shall cause the entire indebtedness to become immediately due and payable.
The court held that this was an absolute acceleration clause, and that the note automatically matured and became due in full when a default occurred with regard to one installment.
In the second case, Miller v. Balcanoff, 566 So.2d 1340 (Fla. 1st DCA 1990), the court held that the installment note in that case had no acceleration provision at all, and thus each installment matured on the due date for each one, even though earlier installments were in default. The instrument in that case provided for monthly installment payments until the principal was paid in full, and that “this note shall not be in default if the payment is made within 10 days of the due date.” The Miller court held this language did not mean the full indebtedness became due or went in default, after an installment went unpaid past the ten day grace period. It only meant that the delinquent installment was in default after that time.
Miller and Cook can possibly be distinguished on the ground that the note in Miller did not expressly say the note would be in default if an installment payment went unpaid past the grace period. The note said the note would not he in default if an installment payment was *108 made within the grace period. However it appears to me the logical interpretation of the language used would be to say that if the installment payment was not made within the grace period, the note would then be in default.
The language at issue in this case, in my view, is similar to that used in the Cook case. It says that if an installment is not paid within 60 days after it is due, the whole note is in default. It defies reasonable interpretation to conclude that this means only the past due installment is in default. If that is all it means, it serves no purpose.
If the total note indebtedness is in default, it follows that the holder of the note or payee, can immediately sue for the total balance. Otherwise the term “default” used in conjunction with “note,” as used in the note in this case, means nothing. Further, in ordinary parlance, to non-lawyers[6] and lawyers[7] as well, being in “default” means the indebtedness is past due, immediately payable, and collectable.
Although not as well drafted as many acceleration provisions in documents prepared by lawyers, the language used in this note was sufficient in my view to accelerate the total indebtedness on October 4,1990, by providing the total note was in default at that point. I do not think it is necessary to use the magic words “accelerate” or “immediately due and payable,” if that is the intent and effect of the words used.
Had- the suit been filed on October 5, 1990, the full amount would have been collectable. I seriously doubt a court would have ruled, at that point, that only the one past due installment was recoverable, and that the payee must return to court every month or so to sue on the other installments on their due dates, as they “matured” for 223 consecutive months. What is the sense in that, if all were in default when the suit was filed? Accordingly, in my view, this note accrued and became due and payable because of the default, on October 4, 1990. Therefore, that is the date when the five-year statute commenced to run on the total indebtedness.

. § 95.ll(2)(b) provides:
Action other than for recovery of real property shall be commenced as follows:
(2) WITHIN FIVE YEARS. -
[[Image here]]
(b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument.

. The statute of limitations begins to run on a promissory note when a cause of action accrues against the maker or obligor, or in other words, the day after the obligation is due, or mature. 12 Am.Jur.2d, Bills & Notes § 1054 (1964); §§ 673.109(l)(c) and 673.122(l)(a), Fla. Stat. (1979).

. Compare Jacobs v. Automotive Repair Center, Inc., 137 So.2d 263 (Fla. 1st DCA 1962).

. 11 Am.Jur.2d, Bills & Notes § 194.

. 10C.J.S., Bills & Notes § 79.

. Default is defined by the American Heritage dictionary as: "Failure to meet a financial obligation,” among other things, and "failure to pay money when it is due.” p. 374.

. Default is defined as (among other things) "failure to pay interest or principal on a debt when due.” Black's Law Dictionary 376 (5th ed 1979). Pursuant to the UCC, according to Black’s, "default” means what the parties agree it is.